DECISION AND JUDGMENT ENTRY
This appeal comes to us from a judgment issued by the Lucas County Court of Common Pleas, Juvenile Division, which granted permanent custody of three minor children to Lucas County Children Services ("LCCS") and terminated appellant's parental rights. Because we conclude that the trial court did not err in granting permanent custody, we affirm.
Appellant, Eddie D., is the biological father of three boys, Kjuan C. (born October 20, 1997) and twins, K'ion C. and K'twon C. (born June 5, 1999). The children lived with their mother, Charmaine C. In July 2000, police conducted a drug raid at the mother's home. Charmaine was arrested and LCCS was granted emergency custody of the three children. On August 17, 2000, LCCS filed a complaint in dependency and neglect, and was granted temporary custody of the children who were placed with Charmaine's mother. A reunification case plan was filed in September 2000.
In October 2000, the juvenile court adjudicated the three boys to be dependent and neglected. LCCS filed an amended case plan on December 19, 2000 and a motion for permanent custody on December 28, 2000. On May 3, 2001, the trial court conducted a permanent custody hearing. The following evidence and testimony was presented.
Various service providers testified as to mother's non-compliance with case plan requirements. Charmaine, age twenty-two, had prior convictions for petty theft and check forgery. LCCS caseworker, Susan Pearon, stated that she attempted to coordinate services and requirements with mother's probation officer, Audrey Warner, and Kris Tong, the case manager at Treatment Alternatives to Street Crime ("TASC"). Mother failed to complete a drug and alcohol education program, first, because she fell asleep and then because she was re-incarcerated when the class was rescheduled. Charmaine's urinalysis screens in December, January, and February were clean. She failed to leave samples, however, for several of the required weekly screens. She also failed to follow through with a referral for mental health assessment regarding her reports of violent behaviors, depression, and suicide attempts along with prior hospitalizations for mental health reasons.
Charmaine asked at the hearing that she be given three more months to complete the case plan, stating that she had now made an appointment to have the mental health assessment performed. She stated that she was incarcerated in March and April 2001 for domestic violence against her mother with whom LCCS had placed the three boys. She also acknowledged having previously lost custody of her two older children, who also were currently in her mother's custody.
Charmaine stated that her depression was a result of not having her children. She said that her lack of progress on the case plan requirements was due to all the demands being placed upon her by the courts and LCCS. Mother expressed feeling overwhelmed by all of the requirements imposed by the case plan and the courts as conditions of her probation or community control. In addition to the case plan referrals and drug screens, the court-imposed conditions included that she attend a job skills program, get her GED, and find employment. When asked why she did not keep appointments with the caseworker or for her mental health assessments, Charmaine stated that she was "busy at the time" or "didn't have time." At the hearing, mother was currently living with her maternal grandmother.
Evidence was presented that appellant father, Eddie, age twenty-six, also did not keep scheduled appointments with the LCCS caseworker. When asked why he did not follow through on referrals for drug, parenting, and mental health assessments, he replied that he "didn't feel it was necessary." He reported a sporadic history of employment and had not paid any child support for the three children. He stated that he did not comply with case plan requirements because he "didn't feel that [he] should have to."
Appellant also had a history of some twenty-five criminal charges and several incarcerations over the previous four years, including attempted assault, fleeing and eluding, and various traffic violations. When the children were taken into custody in August 2000, appellant was incarcerated for a probation violation. He testified that he knew he violated court orders regarding visitation by keeping the three children with him overnight for up to a week. Appellant stated, in fact, that he did not intend to follow any court orders regarding his children.
The guardian ad litem recommended permanent custody. The court, finding by clear and convincing evidence that, despite reasonable efforts to prevent their removal from the parents, the children could not and should not be returned to their parents and it was in the best interest of the children to grant permanent custody to LCCS.
Appellant father now appeals from that judgment, setting forth the following two assignments of error:
 "I. THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR BY TERMINATING THE PARENTAL RIGHTS AND RESPONSIBILITIES OF APPELLANT BY FINDING THE CHILDREN COULD NOT BE PLACED WITH EITHER PARENT WITHIN A REASONABLE TIME.
 "II. THE TRIAL COURT ERRED AS A MATTER OF LAW AND MADE FINDINGS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN IT TERMINATED THE PARENTAL RIGHTS OF THE APPELLANT."
We will address appellant's two assignments of error together. R.C.2151.413(A) provides that a public services agency that has been granted temporary custody pursuant to R.C. 2151.353(A)(2) may move for permanent custody of that child. Contrary to appellant's suggestion, there is no statutory requirement for a six-month waiting period before a public children services agency may file for permanent custody.
R.C. 2151.414(B)(1)(a) permits the court to grant such a motion if it finds, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency and the child
 "is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents."
R.C. 2151.414(E) provides that if the court finds one or more of the sixteen listed factors, the court "shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent." (Emphasis added.) The relevant factors in this case are:
 "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties;
"* * *
 "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
"* * *
 "(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child;
"* * *
"(16) Any other factor the court considers relevant."
In this case, sufficient progress was not shown by either mother or appellant, during the approximately nine months that had elapsed by the time of the permanent custody hearing. Appellant, in fact, refused to cooperate with any requirements of the case plan. The record shows that appellant provided no support for the children and had only sporadic contact with them and Charmaine. He was repeatedly incarcerated, and was incarcerated at the time LCCS took emergency custody. Appellant stated that, although he had originally agreed to the case plan requirements at adjudication, he refused to comply because his own feelings about having to complete the case plan were more important than gaining custody of his children. Moreover, appellant displayed open contempt for the court's authority by knowingly violating court orders and announcing that he would not follow the court's orders in the future.
The court found that factors one, four and thirteen above applied to both mother and appellant. Upon a complete review of the record, we conclude that there is clear and convincing evidence to support the juvenile court's findings. Therefore, we conclude that the juvenile court properly terminated parental rights and granted LCCS permanent custody of the three children.
Accordingly, appellant's two assignments of error are not well-taken.
The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., James R. Sherck, J., Richard W. Knepper, J., JUDGES CONCUR.